UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Civil No. 09-2924 (JNE/AJB)

Michael J. Dahlin,

Plaintiff,

v.

Joan Fabian, D.O.C. commissioner, individually and in their official capacities, Jessica Symmes, M.C.F.-O.P.H. Warden, individually and in their official capacities, David Paulsen, D.O.C. Medical Director, individually and in their official capacities, Nanette Larson, D.O.C. Health Service Supervisor, individually and in their official capacities, Barbara Nelson, D.O.C.-R.N. -O.P.H, Medical Supervisor, individually and in their official capacities, Keith Krueger, M.D.-C.M.S. Inc.-O.P.H. Regional Medical Director, individually and in their official capacities, Kathryn Reid, R.N.-C.M.S. Inc.-O.P.H. Medical Director, individually and in their official capacities, Stephen Craane M.D.-C.M.S. Inc.-O.P.H. Primary Physician, individually and in their official capacities, Darin Haugland, C.M.S. Inc.-P.T. Physical Therapist, individually and in their official capacities, D.O.C., Minnesota Department of Corrections, and C.M.S. Inc., Correctional Medical Services Incorporated, individually and in their official capacities,

Defendants.

REPORT & RECOMMENDATION

---

Michael J. Dahlin, MCF - Oak Park Heights, 5329 Osgood Avenue North, Stillwater, MN 55082-1117 (pro se Plaintiff);

Angela Behrens and Margaret E. Jacot, Minnesota Attorney General's Office, 445 Minnesota Street, Suite 900, St Paul, MN 55101 (for Defendants Joan Fabian, Jessica Symmes, David Paulsen, Nanette Larson, Barbara Nelson, Kathryn Reid, and D.O.C.)

Andrea C. Pavelka and Charles A. Gross, Geraghty, O'Loughlin & Kenney, PA, 55 East 5th Street, Suite 1100, St Paul, MN 55101-1812 (for Defendants Keith Krueger, Stephen Craane, Darin Haugland, and C.M.S. Inc.)

## I. INTRODUCTION

This matter is before the Court, Chief United States Magistrate Judge Arthur J. Boylan, on Plaintiff's Motion to Dismiss [Docket No. 70]; Defendants C.M.S. Inc., Stephen Craane, Darin Haugland, and Keith Krueger's Motion for Summary Judgment [Docket No. 56]; Defendants D.O.C., Joan Fabian, Nanette Larson, Barbara Nelson, David Paulsen, Kathryn Reid, and Jessica Symmes's Motion for Motion to Dismiss and for Summary Judgment [Docket No. 60]; and Plaintiff's Motion for Appointment of Medical Expert Witness under Fed. R. Civ. P. 706(a). [Docket No. 41.] This action has been referred to the magistrate judge for report and recommendation to the district court under 28 U.S.C. § 636 and Local Rule 72.2(b).

For the reasons set forth below, **IT IS HEREBY RECOMMMENDED** that Plaintiff's Motion to Dismiss [Docket No. 70] be **DENIED AS MOOT**; Defendants C.M.S. Inc., Stephen Craane, Darin Haugland, and Keith Krueger's Motion for Summary Judgment be **GRANTED**; and Defendants D.O.C., Joan Fabian, Nanette Larson, Barbara Nelson, David Paulsen, Kathryn Reid, and Jessica Symmes's Motion for Summary Judgment be **GRANTED**; and Plaintiff's Motion for Appointment of Medical Expert Witness under Fed. R. Civ. P. 706(a) be **DENIED**. This Court further recommends that Plaintiff's complaint be **DISMISSED WITH PREJUDICE**.

## II. BACKGROUND

Plaintiff Michael J. Dahlin, an inmate at Minnesota Correctional Facility (MCF) Oak Park Heights, contends that Defendants failed to provide him with surgery or a surgical consult for his back pain in violation of his Eighth Amendment right to be free from cruel and unusual

punishment as applied to the state through the Fourteenth Amendment. [Docket No. 1.] Plaintiff brought a claim under 42 U.S.C. § 1983, seeking (1) a declaration that Defendants' acts and omissions violated Plaintiff's rights; (2) preliminary and permanent injunctions, enjoining Defendants from deny him a surgical consult and treatment for his condition; and (3) compensatory and punitive damages.

Plaintiff's allegations can be summarized as follows: Plaintiff suffers from severe, chronic acute degenerative spinal stenosis and multi-level degenerative disc disease; Plaintiff suffers pain and other debilitating symptoms as a result of his conditions; the treatment that Plaintiff has received from Defendants to date has not alleviated his pain and other debilitating symptoms; some of the medical providers with whom he has met with have recommended a surgical consultation following the use of other treatment options; Defendants have ignored these recommendations and have thwarted Plaintiff's efforts to obtain a surgical consultation; to date, Plaintiff has not received the treatment he needs to alleviate his pain and other debilitating symptoms; and Plaintiff has unsuccessfully pursued various internal grievance procedures to obtain treatment to alleviate his pain and other debilitating symptoms. The above allegations encompass a period from June 20, 2006, until the present. A more detailed description of the factual allegations will be set forth below.

This is the second litigation that Plaintiff has initiated while in prison, in relation to the treatment he has received for his pain and debilitating symptoms. *See* (Report & Recommendation, *Dahlin v. Skon, et al.*, Civil No. 07-1854 (Feb. 22, 2008).) Plaintiff brought a previous suit in April 2007 against Erik Skon, Kim Ebeling, Nanette Larson, Robert Feneis, Beth Walker, Denise Barger, Dr. Keith Krueger, Dr. Lucas Purisimo, and Darin Haugland, alleging that these Defendants violated his right to be free from cruel and unusual punishment by denying

his requests for treatment. (Aff. Margaret Jacot, Ex. A July 29, 2010.) This Court recommended that Defendants' motions for summary judgment be granted; this recommendation was adopted by the United States District Court Judge James M. Rosenbaum. [*Dahlin v. Skon, et al.*, Civil No. 07-1854, Docket No. 59.] Judgment was entered on August 25, 2008. [*Dahlin v. Skon, et al.*, Civil No. 07-1854, Docket No. 62.]

On October 21, 2009, Plaintiff filed his present Complaint [Docket No. 1] and Memorandum in Support of Complaint. [Docket No. 3.] Plaintiff was granted leave to file an amended complaint [Docket No. 22], which he did. [Docket No. 23.] Plaintiff's Amended Complaint must be read in conjunction with his initial Complaint. Plaintiff also filed "affidavits for future reference." [Docket No. 27; *see* Docket Nos. 28-31, 33-35, 37-38.] The affidavits are all attestations of Plaintiff concerning events relating to his medical condition that occurred since the Complaint was filed. This Court has reviewed these affidavits and they support that Plaintiff's claims have not become moot.[1] Plaintiff also filed a Motion for Appointment of Medical Expert Witness under Fed. R. Civ. P. 706(a). [Docket No. 41.]

Defendants C.M.S. Inc., Dr. Stephen Craane, Darin Haugland, and Dr. Keith Krueger (C.M.S. Defendants) brought a Motion for Summary Judgment [Docket No. 56.] Defendants D.O.C. (Minnesota Department of Corrections), Joan Fabian, Nanette Larson, Barbara Nelson, Dr. David Paulsen, Kathryn Reid, and Jessica Symmes (D.O.C. Defendants) brought a Motion to Dismiss and for Summary Judgment. [Docket No. 60.]

---

[1] As indicated from Plaintiff's affidavits, Plaintiff appears to be refusing certain forms of treatment because he is engaged in the present litigation. This Court fails to understand how refusing treatment could possibly aid a constitutionally inadequate medical care claim. This Court also fails to understand how refusing treatment serves Plaintiff's ultimate cause of reducing his pain. Nevertheless, Plaintiff's decision to refuse treatment in no way impacts this Court's recommendation.

Plaintiff did not file a response to these motions. Instead, Plaintiff sent a letter to this Court. [Docket No. 70] The letter consists of four handwritten pages, in which Plaintiff describes his past and current medical conditions and his alleged grievances. Plaintiff begins his letter by stating: "I did not know because I did not respond to your previous report and recommendation in <u>Dahlin v. Skon</u>, 07-cv-1854 And that it was dismissed with prejudice on Summary Judgment. That I couldn't refile with better facts and evidence now." (Pl.'s Letter 1-2, Aug. 6, 2010.) Plaintiff concludes his letter by stating as follows:

> I now know I should never have filed this lawsuit to begin with because I am legally barred. But I truly thought my case was valid and I was left with no other option. I wasn't trying to waste your time or be malicious. I just wanted some help and I'm suffering. . . .
>
> You can take this as a motion to dismiss or whatever it's called. Once again, I'm sorry for wasting your time.

(*Id.* at 4.) This Court interprets Plaintiff's letter as a motion to dismiss.

### III. ANALYSIS

#### a. Plaintiff's Motion to Dismiss [Docket No. 70]

Federal Rule of Civil Procedure 41(a)(2) provides that an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper. While Plaintiff's letter constitutes a request for dismissal, tit is proper in the present case to consider Defendants' dispositive motions. Because this Court recommends that Defendants' dispositive motions be granted, this Court recommends that Plaintiff's motion to dismiss be denied as moot.

#### b. D.O.C. Defendants' Motion to Dismiss & Motion for Summary Judgment [Docket No. 60]

D.O.C. Defendants move this Court for an order dismissing Plaintiff's Complaint or granting summary judgment in favor of D.O.C. For the reasons set forth below, this Court

5

recommends that D.O.C. Defendants' Motion to Dismiss and Motion for Summary Judgment be granted to the extent that (1) this Court recommends that all claims for monetary damages against D.O.C. Defendants in their official capacity be dismissed with prejudice; and (2) Court recommends that D.O.C. Defendants' Motion for Summary Judgment be granted and all remaining claims against D.O.C. Defendants be dismissed with prejudice.

### *i. Motion to Dismiss*

***Standard of Review.*** A complaint that is being challenged on a Fed. R. Civ. P. 12(b)(6) motion to dismiss does not need to contain detailed factual allegations to survive the motion, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, __ U.S. __, __, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007)). A complaint must contain sufficient facts to state a claim that is not merely conceivable, but rather, is plausible. *Twombly*, 127 S.Ct. at 1974. When reviewing a motion to dismiss, the claim must be liberally construed, assuming the facts alleged therein to be true and drawing all reasonable inferences from those facts in the plaintiff's favor. *Id.* at 1964-65. A complaint should not be dismissed simply because a court is doubtful that the plaintiff will be able to prove all of the factual allegations contained therein. *Id.* Accordingly, a well-pleaded complaint will survive a motion to dismiss even where the likelihood of recovery appears remote. *Id.* at 1965. However, a plaintiff cannot rely upon general and conclusory allegations to survive a Rule 12(b)(6) motion. *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

D.O.C. Defendants contend that Plaintiff's claims against them in their official capacities must be dismissed because such claims are barred by the Eleventh Amendment of the United States Constitution and by res judicata and collateral estoppel. For the reasons set forth below,

this Court recommends that D.O.C.'s Defendants' motion be granted to the extent that all claims for monetary damages against D.O.C. Defendants in their official capacity be dismissed.

***Section 1983 and Eleventh Amendment.*** Section 1983 states that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

"[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312 (1989) (citation omitted).

A state agency and a state official sued in his or her official capacity for damages is not a "person" within the meaning of section 1983. *Will*, 491 U.S. at 71, 109 S. Ct. at 2312. Furthermore, the Eleventh Amendment of the United States bars claims for damages against a State for alleged deprivations of civil liberties, unless the state has waived immunity or Congress has overridden that immunity. *Will*, 491 U.S. at 66, 109 S. Ct. at 2309-10. "A state agent, however, may be sued in his official capacity if the plaintiff merely seeks injunctive or prospective relief for a legally cognizable claim." *Nix v. Norman*, 879 F.2d 429, 432 (8th Cir. 1989)

Plaintiff's claims are against D.O.C. Defendants in their individual and official capacities. The D.O.C. is a state agency. Minn. Stat. § 15.01. Plaintiff alleges that Defendants Joan Fabian, Jessica Symmes, David Paulson, Nanette Larson, Barbara Nelson, and Kathryn Reid are all state employees. Joan Fabian is the Commissioner of Corrections for the State of

Minnesota. (Compl. at ¶ 4.) Jessica Symmes is the Warden of MCF-Oak Park Heights. (*Id.* at ¶ 5.) Dr. David Paulson is the D.O.C.'s Medical Director. (*Id.* at ¶ 6.) Nanette Larson is the D.O.C. Health Service Supervisor. (*Id.* at ¶ 7.) Barbara Nelson is a registered nurse who is employed by the D.O.C. at MCF-Oak Park Heights. (*Id.* at ¶ 8). Kathryn Reid is a registered nurse who works as the Health Services Administrator. (*Id.* at ¶ 10.) Plaintiff is seeking declaratory relief, injunctive relief, and $175,000 of compensatory damages. The State of Minnesota has not waived its immunity. Therefore, Plaintiff's claims for money damages against the Defendant D.O.C. and the individually named Defendants in their official capacities should be dismissed. *See Thomas v. Gunter*, 32 F.3d 1258, 1261 (8th Cir. 1994). However, the section 1983 claim against these Defendants for money damages in their individual capacities are not barred by the Eleventh Amendment. *See id.* at 1261-62 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 238 (1974)). Likewise, the claims against these Defendants in their official capacity for injunctive relief are not barred by the Eleventh Amendment.

*Claim and Issue Preclusion.* D.O.C. Defendants argue that Plaintiff's claims are barred by the doctrines of res judicata and collateral estoppel. The doctrine of res judicata bars re-litigating claims that have or could have been litigated, if "(1) the prior judgment was rendered by a court of competent jurisdiction; (2) the prior judgment was a final judgment on the merits; and (3) the same cause of action and the same parties or their privies were involved in both cases." *Lane v. Peterson*, 899 F.2d 737, 742 (8th Cir. 1993). Two claims are the same when they arise from the same nucleus of operative facts. *Id*. at 744.

> In the Eighth Circuit, issue preclusion has five elements: (1) the party sought to be precluded in the second suit must have been a party, or in privity with a party, to the original lawsuit; (2) the issue sought to be precluded must be the same as the issue involved in the prior action; (3) the issue sought to be precluded must have been actually litigated in the prior action; (4) the issue

sought to be precluded must have been determined by a valid and final judgment; and (5) the determination in the prior action must have been essential to the prior judgment.

*Ginters v. Frazier*, 614 F.3d 822, 826 (8th Cir. 2010).

This case is not barred by claim or issue preclusion. Plaintiff's previous case concerned events that occurred between 2006 and 2007 whereas this case primarily concerns events that happened between 2008 and 2009.[2] Plaintiff's legal theory has not changed between the cases, but the present case is premised upon a new set of facts that were not adjudicated in the previous case. Therefore, this Court recommends that D.O.C. Defendant's motion be denied as to the issues of claim and issue preclusion.[3]

### ii. Motion for Summary Judgment

**Standard of Review.** Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party has the initial responsibility of demonstrating that there is no genuine issue of material fact to be decided. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986). When a motion for summary judgment has been made and supported by the pleadings and affidavits, the burden shifts to the party opposing the motion to proffer evidence

---

[2] For example, Nanette Larson is the only D.O.C. Defendant named in both lawsuits. In Plaintiff's previous case, he argued that in August 2006, Defendant Larson did nothing to correct the fact that Plaintiff's treatment was not relieving his pain and other symptoms. (Aff. Jacot, July 29, 2010.) In the present Complaint, Plaintiff states that Nanette Larson made "false data entry claims" sometime after May 2008. (Compl. at ¶ 16.) Plaintiff's claims clearly arise out of two separate sets of operative facts.

[3] Although his present claims are not barred by claim and issue preclusion, they are futile as a matter of common sense. This Court clearly explained in its prior Report and Recommendation why Plaintiff failed to raise a genuine issue of material fact on his previous claims. As will be explained below, in the present case, Plaintiff also fails to raise a genuine issue of material fact for many of the same reasons.

9

demonstrating that a trial is required because a disputed issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356 (1986).

**Eighth Amendment Analysis.**

> The Eighth Amendment's proscription of cruel and unusual punishment obligates prison officials to provide inmates with medical care. To prevail on a claim of constitutionally inadequate medical care, the inmate must show that the prison officials' conduct amounted to deliberate indifference to the prisoner's serious medical needs.
>
> . . . .
>
> An Eighth Amendment claim that prison officials were deliberately indifferent to the medical needs of inmates involves both an objective and a subjective component. The plaintiffs must demonstrate (1) that they suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs. Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are "serious."[4] The failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge. As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment. Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs. Mere negligence or medical malpractice, however, are insufficient to rise to a constitutional violation.

*Dulany v. Carnahan*, 132 F.3d 1234, 1237-39 (8th Cir. 1997) (quotations and citations omitted).

"An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in

---

[4] A serious medical need is a need that has been diagnosed by a physician as requiring treatment or that is so obvious that the necessity for professional attention would be easily recognized by a layperson. *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997).

medical treatment to succeed." *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997) (quotation omitted.) "A prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fails to rise to the level of a constitutional violation." *Meuir v. Greene County Jail Employees*, 487 F.3d 1115, 1118-19 (8th Cir. 2007) (quotation omitted).

Plaintiff has not presented any evidence that the D.O.C. Defendants' conduct amounted to deliberate indifference to the prisoner's serious medical needs. Rather, Plaintiff has presented allegations that he was denied the particular medical treatment that he wanted. For the reasons set forth below, this Court recommends that the D.O.C. Defendants' Motion for Summary Judgment be granted.

Plaintiff alleges as follows: In September 2006, Plaintiff was seen by a neurosurgeon, Dr. Hoj, who ordered that Plaintiff undergo an M.R.I. and stated Plaintiff should receive steroid injections and "I think he would need a neurosurgical or spinal surgery evaluation . . . ." (Compl. ¶ 19.) Plaintiff contends that Dr. David Paulson overrode Dr. Hoj's diagnosis. (*Id.*) In January 2006, Plaintiff was seen by orthopedic spinal surgeon Dr. Daryll Dykes, who recommended that Plaintiff be seen by a chronic pain specialist, and if the chronic pain specialist could not address Plaintiff's medical conditions, then Dr. Dykes would "discuss surgical options" with Plaintiff. (*Id.* at ¶ 22.) In August 2007, Plaintiff saw Dr. Espeland, a chronic pain specialist, and received treatment from Dr. Espeland for approximately seven months. (*Id.* at ¶¶ 24-28.) Plaintiff reported to Dr. Espeland that the treatment was not relieving his pain and other symptoms. In March 2008, Dr. Espeland recommend one more round of treatment and instructed Dr. Craane that if the injection failed to give lasting relief that Plaintiff should be seen by an orthopedic spinal surgeon. (Compl. ¶ 29.)

Plaintiff further alleges as follows: In early 2008, Plaintiff saw Dr. Stephen Craane, who denied Plaintiff's request for a surgical consultation. Following Dr. Craane's denial of his request for a surgical consult, throughout the remainder of 2008, Plaintiff wrote numerous correspondences to Defendants Joan Fabian, Nanette Larson, Barbara Nelson, and Kathyrn Reid in which he stated that he was in pain and that he should see an orthopedic spinal surgeon. (Compl. ¶¶ 32, 33, 37, 41, 42, 45, 46, 47, 50, and 51.) In August 2008, Correctional Officer Dennis Niemela saw Plaintiff's legs give out on him and Barbara Nelson failed to include Niemela's report in Plaintiff's file. (*Id.* at ¶¶ 40-41.) In the fall of 2008, Dr. Craane, Physical Therapist Darin Haugland, and Dr. Keith Krueger told Plaintiff that surgery was an inappropriate course of treatment because he could still walk, his legs have not atrophied, and that surgery was too risky. (*Id*. ¶¶ 52-54.)

Plaintiff further alleges as follows: Throughout the first half of 2009, Plaintiff continued to receive treatment, which did not alleviate his symptoms. Throughout this time, Plaintiff continued to request alternative treatments, including the surgical consultation. In June 2008, Dr. Craane reported to Plaintiff that he called Dr. Espeland, who concluded that surgery would provide little benefit to Plaintiff. (Compl. ¶ 62.) Following this report, Plaintiff wrote a series of correspondence to Defendant Jessica Symmes in which he stated that he was in chronic pain and that he should see an orthopedic spinal surgeon. (Compl. ¶¶ 63, 65.) Based upon these alleged facts, Plaintiff contends that the D.O.C. Defendants have denied him a "recommended spinal surgical consult." (Compl. ¶ 73.)

Plaintiff has failed to raise a genuine issue of material fact from which a trier of fact could conclude that D.O.C. Defendants have been deliberately indifferent to his medical needs. As to Defendant Dr. Paulson, Dr. Paulson's affidavit states as follows: he has reviewed

Plaintiff's records; Plaintiff has been seen frequently by a nurse, nurse practitioner, physical therapist, and a physician throughout the period in question (Aff. Dr. Paulson, ¶ 7, July 23, 2010); Plaintiff has been diagnosed with spinal stenosis, degenerative disc disease, and chronic pain (*id.* at ¶ 8); Plaintiff M.R.I.'s have not shown any compressed nerves (*Id.* at ¶ 8); Plaintiff has been prescribed various medications, including sleep medication, for his condition (*id.* at ¶¶ 13, 20); contrary to Plaintiff's allegations, in January 2007, he saw a neurosurgeon, Dr. Benjamin Hackett, who stated that there was nothing dangerous in Plaintiff's x-rays or M.R.I. to warrant surgery (*id.* at ¶ 15); Dr. Paulson reviewed Plaintiff's medical records and prescribed a second M.R.I. in May 2008, which did not show compressed nerves and Plaintiff was, therefore, not a good candidate for surgery (*id.* at ¶ 17); a panel of CMS medical providers reviewed Plaintiff's case and recommended that he be monitored for objective signs of nerve compression (*id.* at ¶ 17); and since that time Plaintiff has been treated and evaluated by C.M.S. doctors on a regular basis. (*Id.* at ¶ 18.) Dr. Paulson also notes that Plaintiff is free to arrange for a surgical consult provided that he assumes financial responsibility for the consult. (*Id.* at ¶ 19.)

Dr. Paulson's submissions make clear that Plaintiff has received extensive medical treatment, Plaintiff received a surgical consult, and Plaintiff's physicians have concluded that a further surgical consult is unwarranted unless Plaintiff shows objective signs of nerve compression. Plaintiff has presented no evidence to create a genuine issue of material fact that these actions deliberately disregard Plaintiff's medical needs. *See Dulany v. Carnahan*, 132 F.3d 1234, 1241 (8th Cir. 1997) (holding that an inmate's disagreement with a physician's prescribed treatment does not create a genuine issue of material fact).

As to Joan Fabian, Jessica Symmes, Nanette Larson, Barbara Nelson, and Kathryn Reid, Plaintiff has not alleged any facts or presented any evidence to support how these individuals

have prevented him from receiving treatment. As to Joan Fabian, Jessica Symmes, and Nanette Larson, these individuals are not doctors and have no authority to prescribe a medical procedure or refer him for a surgical consult. (Aff. Dr. Paulson, ¶¶ 21-22). Likewise, as registered nurses, Barbara Nelson and Kathryn Reid have no authority to override the decisions of physicians. (Aff. Barbara Nelson ¶ 6, July 30, 2010.) Furthermore, while Barbara Nelson acknowledged that no report of Plaintiff's legs giving out was included in his medical records immediately, the report was made on August 25, 2010, approximately 10 days after the event occurred.[5] (*Id.* at ¶ 5.) Plaintiff also alleges that he frequently mentioned this incident to medical staff. Common sense dictates that for Plaintiff to maintain a constitutionally inadequate medical care claim against non-physicians D.O.C. Defendants, Plaintiff must offer evidence that he did not receive care from a physician and that the non-physician D.O.C. Defendants were thwarting Plaintiff's access to a physician's care. *See Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997). In the present case, Plaintiff alleges that he frequently saw a physician; he simply disagrees with the prescribed course of treatment, without offering any verifying medical evidence that the prescribed course of treatment created an excessive risk to his health. Thus, Plaintiff has failed to raise a genuine issue of material fact that non-physician D.O.C. Defendants thwarted Plaintiff's access to medical care.

There are no facts or allegations in the record to support that the conduct of the D.O.C. Defendants has amounted to deliberate indifference to Plaintiff's medical needs. Therefore, this Court recommends that D.O.C. Defendants' Motion for Summary Judgment be granted.

**Qualified Immunity Analysis.** The D.O.C. Defendants also argue that they are entitled to qualified immunity. Government officials are entitled to qualified immunity when performing

---

[5] Dennis Niemela has stated that he has no recollection of this incident. (Aff. Niemela ¶ 2, July 23, 2010.)

discretionary functions, unless they violate clearly established law. *Beck v. Wilson*, 377 F.3d 884, 889 (8th Cir. 2004). Qualified immunity is an affirmative defense. *Id*. "The first inquiry must be whether a constitutional right would have been violated on the facts alleged." *Saucier v. Katz*, 533 U.S. 194, 200 (2001). The second inquiry is only necessary if a constitutional violation is established, and requires the court to consider whether the right was clearly established. *Id*.

The D.O.C. Defendants are government officials performing discretionary functions in their dealings with Plaintiff. The Court has analyzed Plaintiff's claims of violation of his Eighth Amendment rights by D.O.C. Defendants and found that Plaintiff has failed to establish his claims.

> If the court finds no constitutional violation occurred, the analysis ends and the issue of qualified immunity is not addressed. . . . This is not to say, however, the defendant official is entitled to qualified immunity. Rather, if no constitutional violation occurred, plaintiff's claim fails as a matter of law because plaintiff did not prove an essential element of the § 1983 claim.

*Ambrose v. Young*, 474 F.3d 1070, 1077 n. 3. (8th Cir. 2007) (citations omitted).

### c. Motion C.M.S. Defendants' Motion for Summary Judgment

Defendant C.M.S. Inc., Dr. Stephen Craane, Darin Haugland, and Dr. Keith Krueger brought a Motion for Summary Judgment, arguing that Plaintiff has failed to raise a genuine issue of material fact to support his claim and his claims are barred by the doctrine of res judicata. For the reasons set forth below, this Court recommends that C.M.S. Defendants' Motion for Summary Judgment be granted.

#### i. Eighth Amendment

The standard of review and some relevant facts were set forth above. This section focuses on Plaintiff's allegations as they relate to the C.M.S. Defendants.

***Dr. Stephen Craane & Darin Haugland.*** Plaintiff alleges as follows: Following his consultation with Dr. Dykes, Plaintiff received chronic pain treatment throughout 2007 and early 2008. (Compl. ¶¶ 23-28.) Beginning in February 2008, Plaintiff complained to Dr. Craane and Haugland that the chronic pain treatment failed to work and that he needed a surgical consult. (*Id.* at ¶ 31.) Dr. Craane and Haugland "instructed that [Plaintiff] would be given monthly monitoring instead." (*Id.*) During an exam in March 2008, Dr. Craane and Haugland again denied Plaintiff's request for a surgical consult. (*Id.* at ¶ 31.) In April 2008, Plaintiff told Haugland that his foot was dragging, but Haugland noted that Plaintiff showed no signs of spinal stenosis. (*Id.* at ¶ 34.) Plaintiff met with Dr. Craane and Haugland in September 2008, and they told him that surgery was too risky because he could still walk and his legs have not atrophied. (*Id.* at ¶ 52.) They told him that he was at the maximum dosage of his pain medication and he should be seen by a psychiatrist for his sleep concerns. (*Id.*)

Plaintiff further alleges as follows: Plaintiff contends that during a November 2008 appointment, he described an incident in which his legs would not function, and Dr. Craane told him that he could not have a surgical consult because he could still walk and his legs had not atrophied. (*Id.* at ¶ 54.) In December 2008, Plaintiff met with Dr. Craane and Haugland, and reported to them that he had extreme weakness in his leg and pain following an altercation with another inmate. (*Id.* at ¶ 55.) In April 2009, Plaintiff met with Dr. Craane to discuss a pain pump and Dr. Craane conclude that he was not a candidate for a pain pump because Plaintiff had been in an altercation with another inmate in December 2008.[6] (*Id.* at ¶ 58.) Later that month, Dr. Craane denied Plaintiff's request for a surgical consult, but changed Plaintiff's medication. (*Id.* at ¶ 59.)

---

[6] A video of this altercation was provided to the Court. (Aff. Green, Ex. C.) The video also contains video of a July 2009 incident where Plaintiff engaged in an altercation and chased an inmate.

Plaintiff further alleges as follows: In May 2009, Plaintiff was told by Dr. Craane and Hauglund that his request for a surgical consult was denied because he could still walk and his legs have not noticeably atrophied. (*Id.* at ¶ 60.) Plaintiff contends that Dr. Craane's report from June 2009 states that Dr. Craane spoke with Dr. Espeland, who advised Dr. Craane that surgery would provide little benefit to Plaintiff. (*Id.* at ¶ 62.) Plaintiff met with Dr. Craane and Hauglund again in July 2009, and was again told that he would not receive a surgical consult but that he would prescribe Plaintiff an "older pain medication." (*Id.* at ¶ 66.) Plaintiff met with Hauglund and Dr. Krueger later that month and was again denied a surgical consult. (*Id.* at ¶ 67.) In addition to the allegations set forth above, Plaintiff seems to make a general allegation that Dr. Craane and Huaglund have deliberately distorted Plaintiff's medical records.

***Dr. Keith Krueger.*** Plaintiff alleges as follows: In October 2008, Plaintiff met with Dr. Krueger, who told Plaintiff that he will not be given a surgical consult because it was too risky. (*Id.* at ¶ 53.) Dr. Krueger erroneously reported that there is no documentation of Plaintiff's description of subjective symptoms. (*Id.* at ¶ 53.) As stated above, Plaintiff also met with Dr. Krueger and Hauglund in July 2009. (*Id.* at ¶ 67.) Plaintiff asserts that on both meetings with Dr. Krueger, he told Plaintiff to learn to live with his pain and to report further symptoms to health services. Plaintiff asserts that there is a conspiracy to disregard his subjective pain and symptoms and fail to document objectively observable symptoms.

**Analysis.** C.M.S. is a private corporation that provides professional health care services to inmates in Minnesota correctional facilities subject to a contract with the State of Minnesota. (Aff. Poliak ¶ 3, July 26, 2010.) Drs. Craane and Krueger are independent contractors for Defendant C.M.S. (*Id.* at ¶ 5.) Hauglund is an employee of Defendant C.M.S. (*Id.* at ¶ 6.) Haugland has no authority to refer Plaintiff for a surgical consult or to override a physician's

decision. (Aff. Haugland ¶ 7, July 29, 2010.) Plaintiff's medical records as well as affidavits of Dr. Craane, Dr. Krueger, and Haugland are consistent with D.O.C. Defendants' evidence: Plaintiff has frequently seen health care providers to address his pain and other symptoms; C.M.S. Defendants regularly record Plaintiff's request for surgical consult and his subjective pain and symptoms; Plaintiff has been prescribed medication and received treatment for his pain and other symptoms; Plaintiff's objective and subjective symptoms have been recorded; and Plaintiff has been repeatedly told that he is not a candidate for surgery. The record indicates that Plaintiff has a medical need requiring treatment, but Plaintiff has failed to offer any evidence that the C.M.S. Defendants deliberately disregarded an excessive risk to Plaintiff's health by refusing his request for surgery or a surgical consult. To the extent that Drs. Espeland, Hoj, and Dykes have recommended surgical consults following other forms of treatment, none of them (or any other medical professional) has stated that failure to perform surgery presents an excessive risk to Plaintiff's health. Furthermore, Dr. Craane, Dr. Krueger, and Hauglund have not deprived him of surgery; rather, they have said that given Plaintiff's current condition the risks outweigh the benefits.[7]

There are no facts or allegations in the record to support that the conduct of the C.M.S. Defendants amounted to deliberate indifference to Plaintiff's medical needs. Therefore, this Court recommends that C.M.S. Defendants' Motion for Summary Judgment be granted.

### ii. *Res Judicata*

For the reasons set forth in the claim and issue preclusion analysis for the D.O.C. Defendants, this Court recommends that C.M.S. Defendants' motion be denied to the extent that it relies upon res judicata. C.M.S. Defendants' res judicata argument assumes that Plaintiff's

---

[7] Plaintiff saw neurologist Dr. Chad Evans in May 2010 and Dr. Evans found no neurologic deficits and did not recommend surgery. (Aff. Dr. Craane ¶ 26, July 22, 2010.)

prior case and present case are the same because both are based upon claims of indifference to medical need. However, res judicata does not bar the litigation of similar claims if the factual nexus of the claims are different. While both claims allege the same cause of action, the causes of action are based on different factual situations. Without a nexus of operative fact the two claims are sufficiently distinct that the doctrine of res judicata does not apply.

**4. Plaintiff's Motion for Appointment of Medical Expert Witness [Docket No. 41]**

The appointment of an expert will not aid the Court in its analysis of Plaintiff's claims. Fed. R. Evid. 706. This Court recommends that Plaintiff's Motion for Appointment of a Medical Expert Witness be denied.

IV.     RECOMMENDATION

Based upon the record, memoranda, and oral arguments of counsel, **IT IS HEREBY RECOMMENDED** that:

1. Plaintiff's Motion to Dismiss [Docket No. 70] be **DENIED AS MOOT**;

2. Defendants D.O.C., Joan Fabian, Nanette Larson, Barbara Nelson, David Paulsen, Kathryn Reid, and Jessica Symmes's Motion for Summary Judgment [Docket No. 60] be **GRANTED**;

3. Defendants C.M.S. Inc., Stephen Craane, Darin Haugland, and Keith Krueger's Motion for Summary Judgment [Docket No. 56] be **GRANTED**;

4. Plaintiff's Motion for Appointment of Medical Expert Witness under Fed. R. Civ. P. 706(a) be **DENIED** [Docket No. 41]; and

5. Plaintiff's complaint be **DISMISSED WITH PREJUDICE**.


Dated:       12/14/10

                s/ Arthur J. Boylan
                Chief Magistrate Judge Arthur J. Boylan
                United States District Court

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and by serving upon all parties written objections that specifically identify the portions of the Report to which objections are made and the basis of each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before       December 29, 2010      .